UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

REBECCA CRELLER,

           Plaintiff,

v.                                                                Case No. 5:06-cv-289-Oc-10GRJ

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions. (Docs. 14 & 15.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On July 17, 2003, Plaintiff protectively filed an application for a period of disability and disability insurance benefits claiming a disability onset date of April 7, 2003. (R. 48-52.) Plaintiff's application was denied initially (R. 23-24), and upon reconsideration. (R. 32-35.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("ALJ"). The ALJ conducted Plaintiff's administrative hearing on July 18, 2005 (R. 201-225) and issued a decision unfavorable to Plaintiff on November 21, 2005. (R. 11-22.) The Appeals Council denied Plaintiff's request for review on June 22, 2006. (R. 4-6.) On August 10, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE EVIDENCE

Plaintiff was born on July 9, 1963 and was forty-two (42) years old at the time of the ALJ's decision. (R. 205.) Plaintiff completed high school and has past relevant work history as a bus driver, a custodian, and a factory worker. (R. 205.) Plaintiff contends that she became disabled on April 7, 2003 due to spondylolysis, back pain, diabetes, kidney disease, depression and asthma. (R. 62, 207-208.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from diabetes mellitus, spondylolysis, and back pain. (R. 21.) The ALJ determined that Plaintiff was incapable of performing her past relevant work but that she was not disabled because she retained the residual functional capacity (RFC) to perform a wide range of work at the light exertional level. (R. 21.)

***The Medical Evidence***

---

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

The medical records show that from December 18, 2002 through August 18, 2003, Plaintiff was treated by Michael G. Hughes, M.D., a consulting neuropathologist, for complaints of pain. (R. 109-115.) Plaintiff presented to Dr. Hughes with complaints of pain in the lumbosacral area, and with pain that radiates down into the lateral thigh and anterolateral calf, more so on the right than the left. Plaintiff complained of pain at the thoracolumbar junction and the left lumbosacral area. Plaintiff reported to Dr. Hughes that her pain began when she slipped on the ice at work in January 2002. Plaintiff reported that the pain was not subsiding and her only treatment thus far was medication. (R. 114.) Dr. Hughes diagnosed Plaintiff with spondylolysis and listhesis, and pain in the thoracic area probably secondary to spasm. (R. 115.)

Dr. Hughes referred Plaintiff to Dr. Muzlakovich for further evaluation and treatment. Dr. Hughes did not offer an opinion regarding any functional limitation that Plaintiff might have, but did suggest that Plaintiff would be a good candidate for epidural steroid injections, pool therapy and back exercises. Dr. Hughes stated that he would keep Plaintiff "off work until she sees Dr. Muzlakovich."

On January 7, 2003, Plaintiff was evaluated by David A. Muzlakovich, M.D. (R. 133-134.) Dr. Muzlakovich opined that Plaintiff had mechanical back pain with documented pars defects at the L5 level with grade I spondylolisthesia. Plaintiff did not have any strong radicular presentation at the time of the examination. Dr. Muzlakovich noted that Plaintiff "is to remain off work at this time." Dr. Muzlakovich refilled Plaintiff's prescriptions for Vicodin and Flexeril.

On January 9, 2003, Dr. Muzlakovich injected Plaintiff with a joint block for her pain. On January 15, 2003, Plaintiff reported that she received a 60%-75% transient

reduction in her lower back pain after the block. Dr. Muzlakovich stated that Plaintiff is to "remain off work at this time." (R. 131.) Plaintiff received another joint block injection on January 23, 2003 with Dr. Muzlakovich. (R. 130.)

Plaintiff returned to Dr. Hughes for a follow-up examination after receiving the two joint block injections. Plaintiff reported daily pain on at a 8/10 level and that she stopped performing household chores because of her pain. Plaintiff also reported that she could not walk at the grocery store because of back pain and radicular pain and paresthesia down her legs. Dr. Hughes opined that there "is essentially no improvement in her status." Dr.Hughes did note that the dynamic films of her back taken on December 30, 2002 showed a stable L5-S1 spondylolysis with listhesis without change on flexion/extension. Hips and pelvis were negative. An MRI of Plaintiff's thoracic spine did not show any cord compression. At T6-T7 there is small bulging that is the same at T7-T8 and T10-T11. (R. 113.)

During Plaintiff's April 21, 2003 visit with Dr. Hughes, Dr. Hughes opined that Plaintiff has "other somatic symptoms but her main problem is her lumbosacral pain with a radicular component bilaterally. She has a grade I listhesis and a pars defect at L5-S1." Dr. Hughes noted that he gave Plaintiff three options: (1) get a second opinion; (2) live with the pain; or (3) consider spinal fusion. Plaintiff also had an ongoing problem with her blood sugar and reported to Dr. Hughes that she was seeking treatment from Dr. Aqueel for kidney problems and losing protein. Dr. Hughes recommended that Plaintiff get a pain evaluation by Dr. Lazar and that Plaintiff should be kept off of work until her next visit with Dr. Hughes. Plaintiff was prescribed no medication. (R. 112.)

Plaintiff returned to Dr. Hughes' office on June 16, 2003, at which time Dr. Hughes noted Plaintiff's new onset of diabetes with a history of diabetic retinopathy. He noted that Dr. Lazar thinks Plaintiff has underlying chronic nephritis and a pain elevation by Dr. Lazar showed an objective pain patient. Dr. Hughes scheduled Plaintiff for fusion.

Plaintiff returned to Dr. Hughes on August 6, 2003 and did not want the fusion surgery. Dr. Hughes stated that there is "a question about what kind of work that she can and cannot do. If she wants to go back to her regular job without restrictions, fine. If not, and if that is a problem, then I would refer her to Dr. Muzlakovich." (R. 110.) On August 18, 2003, Dr. Hughes discharged Plaintiff as a patient and referred her to Dr. Muzlakovich for a Functional Capacity Evaluation. (R. 109.)

In a September 9, 2003 progress note, Dr. Muzlakovich noted that Plaintiff's "score on her physical capacity evaluation was rated as poor." Plaintiff has a limited cardiovascular conditioning. Dr. Muzlakovich limited Plaintiff to climbing no more than one fight of stairs every two hours as needed. Strength testing reflected severe limitations and she should she restricted from lifting below knee level entirely. Between knee and waist level Plaintiff is permitted to lift on rare occasions up to 20 pounds. On a frequent basis, she should be limited to no more than 5 to 10 pounds. At waist level Plaintiff can carry up to 20 pounds maximally, on an occasional basis. "Again, frequent carries should be reduced down to the 5 to 10 pound region." Plaintiff should not be asked to do reaching activities above shoulder level. Between waist and shoulder level she can reach on an occasional basis, but with no more than 5 pounds. Pushing and pulling should be limited to 25 pounds on an occasional basis. Plaintiff's sitting and standing tolerance are limited. Plaintiff should be given a sit/stand option at will and not

asked to walk more than on rare occasions throughout the workday. Plaintiff has no restriction with regard to her upper extremities, although her dexterity testing does show some limitations. (R. 117.)

From March 17, 2004 through May 18, 2005, Plaintiff was treated by M. Allan Reheem, M.D., a consulting pain management specialist for complaints of lower back and right leg pain. On June 16, 2004 Plaintiff reported that her pain had improved in her lumbar area since her last visit with Dr. Reheem. Plaintiff used Lidoderm patches, which she reported brought her pain back under control. She was taking two Vicodin ES per day. Plaintiff was walking with the help of a cane. (R. 186.) At her December 3, 2004 visit with Dr. Reheem, Dr. Reheem noted that Plaintiff's pain was controlled to a "tolerable level" with medications but that she was still having "a lot of burning and shooting pain in the legs." Dr. Reheem prescribed Vicodin HP and Elavil. (R. 183.) As of Plaintiff's January 26, 2005 visit with Dr. Reheem, Plaintiff was noted to be symptomatic with low back pain. She was still ambulating with the assistance of a cane. Dr. Reheem noted that Plaintiff was "fairly functional" and that she was "resting well at night." (R. 182.)

***The ALJ's Decision***

The ALJ, after reviewing the medical evidence of record, found that Plaintiff's diabetes mellitus, spondylolysis, and back pain were "severe" impairments, as defined in the Regulations, but that they did not meet or medically equal the criteria of any impairments listed in Appendix 1, Subpart P, Regulations No. 4.[23]

---

[23] R. 21.

The ALJ then made the determination as to whether Plaintiff retained the RFC to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. The ALJ found that "claimant's subjective complaints are not fully credible considering the claimant's own description of her activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, the claimant's assertions concerning her ability to work."[24]

The ALJ found Plaintiff's testimony regarding her daily activities did not describe daily activities that were "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." The ALJ noted that Plaintiff "testified she can take care of her personal hygiene, drives, does household chores and cooks."[25] In addition, the ALJ stated that Plaintiff's "medications have been relatively effective in controlling the claimant's symptoms."[26] The ALJ noted that Plaintiff was fairly functional according to Dr. Reheem and Plaintiff reported the medications controlled her pain to a tolerable level.

The ALJ noted that on October 30, 2003, a non-examining doctor from the State agency assessed Plaintiff's physical ability to perform work-related activities in light of the medical evidence of record and concluded that Plaintiff had the residual functional

---

[24] R. 18.

[25] R. 17.

[26] R. 18.

capacity to lift 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for about 6 hours in an 8-hour workday with unlimited pushing and pulling; occasionally limited with stooping and crouching and frequently limited with climbing, balancing, kneeling and crawling; and limited in reaching all directions including overhead bilaterally.[27] The ALJ noted that while she "considered" the opinion of the State Agency medical consultant, additional evidence received into the record at the hearing convinced the ALJ that "the claimant was more limited than originally thought" by the State Agency physician.[28]

The ALJ states that she gave "great weight" to Dr. Muzlakovich regarding Plaintiff's RFC and that although Dr. Muzlakovich stated that Plaintiff could not perform any substantial work, that the limitations from Dr. Muzlakovich's physical capacities evaluation were presented in a hypothetical to the VE. The VE concluded that Plaintiff could perform substantial work and the ALJ gave the VE "greater weight" regarding "vocational issues."[29]

The ALJ, after having considered all of the evidence, found that Plaintiff had the following residual functional capacity: stair climbing is limited to no more than one flight every two hours. She is restricted from lifting below knee level entirely. Between knee and waist level Plaintiff is permitted to lift occasionally up to 20 pounds. On a frequent basis, she should be limited to no more than10 pounds. At waist level Plaintiff can carry up to 20 pounds maximally, on an occasional basis. "Again, frequent carries should be

---

[27] R. 19, 148-155.

[28] R. 19.

[29] Id.

reduced down to the 10 pound region. Plaintiff should not be asked to do reaching activities above shoulder level. Between waist and shoulder level she can reach on an occasional basis, but with no more than 5 pounds. Pushing and pulling should be limited to 25 pounds on an occasional basis. Plaintiff's sitting and standing tolerance are limited. Plaintiff should be given a sit/stand option at will and not asked to walk more than occasionally throughout the workday.[30]

The ALJ found that Plaintiff could not perform her past relevant work as she described it and that she had no transferable skills.[31] The ALJ asked a vocational expert ("VE") whether jobs exist in the national economy that the claimant can perform given her RFC and other vocational factors. The VE testified, assuming the hypothetical individual's specific work restrictions, that she is capable of making a vocational adjustment to other work, specifically, as a packager and as an assembly worker.

The ALJ concluded that based on the testimony of the VE, the Plaintiff is "capable of making a successful adjustment to work that exists in significant numbers in the national economy," that Plaintiff could perform a wide range of "light" work as defined by 20 CFR § 404.1567, and thus was not disabled."[32]

## IV. DISCUSSION

---

[30] R. 17.

[31] R. 19.

[32] R. 20.

Plaintiff's sole argument is that the ALJ violated the Eleventh Circuit pain standard by rejecting her subjective allegations of disabling pain and limitations with no evidentiary basis for doing so.

The law concerning the analysis of subjective complaints of pain is well settled. In evaluating disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[33]  The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[34]  The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition.  Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[35]  "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[36]  However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[37]

---

[33] 20 C.F.R. § 404.1528.

[34] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[35] Id.

[36] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[37] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the
(continued...)

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[38] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[39]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[40] assessment to Plaintiff's subjective complaints by noting that Plaintiff presented objective medical evidence that established that diabetes mellitus, spondylolysis, and back pain were medical impairments. (R. 21.) Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding her level of pain and inability to work were not wholly credible.

In making this finding, the ALJ articulated no less than seven reasons for finding that Plaintiff's claims were not fully credible including: "claimant's own description of her activities and lifestyle, the degree of medical treatment required, the discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and

---

(...continued)
existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[38] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[39] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[40] Marbury, 957 F.2d at 839.

examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work."[41] All of these reasons are supported by substantial evidence in the record. While an ALJ is not prohibited from considering a claimant's appearance and demeanor during a hearing,[42] the ALJ cannot merely rely on his observation of a claimant at the hearing as the only basis upon which to reject a claimant's reference to pain.[43] While the ALJ did comment on Plaintiff's demeanor at the hearing, the ALJ accorded it only "slight weight" and discussed six other reasons to support her decision.

The ALJ conducted a thorough examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The ALJ noted and properly recognized that Plaintiff complained of "shooting pain from the back to the hips and down to the legs"[44] that Plaintiff used "Vicodin,"[45] "received two nerve block injections,"[46] and that Plaintiff "received physical therapy for chronic low-back pain."[47]

In accordance with the pain standard, the ALJ in this case articulated her reasons for discounting Plaintiff's complaints of pain. The ALJ specifically found that "the medications have been relatively effective in controlling the claimant's symptoms,"

---

[41] R. 18.

[42] See Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).

[43] See Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).

[44] R. 17.

[45] R. 16.

[46] Id.

[47] Id.

that "Dr. Reheem reported that the claimant was fairly functional and that the medications controlled her pain to a tolerable level."[48] The ALJ also found that Plaintiff's treatment "has been essentially routine and/or conservative in nature" and that "Dr. Hughes recommended lumbar fusion surgery; however, the claimant declined."[49] This suggests that the pain was not bad enough for Plaintiff to receive the surgery.

In addition, the ALJ fully adopted the limitations set forth by Plaintiff's treating physician, Dr. Muzlakovich, and presented these exact limitations in the hypothetical to the VE. Dr. Muzlakovich stated in his progress note that Plaintiff's restrictions were "based on her continued complaints of back and lower leg pain."

Lastly, the ALJ in his analysis properly noted that the Plaintiff's activities of daily living, including taking care of her personal hygiene, driving, performing household chores and cooking, were inconsistent with her claims of disabling symptoms and limitations. While the Plaintiff's activities of daily living are not conclusive evidence that she was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform light level work.

Accordingly, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing the Plaintiff's subjective complaints of pain. After properly addressing Plaintiff's complaints of pain, the ALJ then articulated specific reasons for rejecting Plaintiff's testimony that she had disabling symptoms or limitation, which reasons were based upon the medical evidence and other substantial evidence of

---

[48] R. 18.

[49] Id.

record. Where, as here, an ALJ has made a clearly articulated credibility finding based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on June 6, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel